IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) CIVIL ACTION NO.:<br>) 1:13-CV-00706<br>) |
| v. | )<br>) |
| CAROLINA MATTRESS GUILD, INC., | ) COMPLAINT<br>) |
| Defendant. | ) JURY TRIAL DEMAND<br>) |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and retaliation, and to provide appropriate relief to Ricky Clark (hereafter sometimes referred to as "Clark") and other similarly situated black employees who were adversely affected by such practices. As articulated below in greater detail, the U.S. Equal Employment Opportunity Commission ("EEOC" or "the Commission") alleges that Defendant, Carolina Mattress Guild, Inc. ("Defendant"), subjected Clark and other similarly situated black employees to a racially hostile work environment based on their race, black. The EEOC further alleges that Defendant terminated Clark in retaliation for complaining about the harassment.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section

706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the U.S. District Court for the Middle District of North Carolina.

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4. Defendant is a North Carolina corporation with its principal place of business in Thomasville, North Carolina.

5. At all relevant times, Defendant has continuously been doing business in the State of North Carolina and the City of Thomasville and has continuously had at least fifteen (15) employees.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

7. More than thirty days prior to the institution of this lawsuit, Ricky Clark filed a charge of discrimination with the Commission alleging violations of Title VII by

2

Defendant.  All conditions precedent to the institution of this lawsuit have been fulfilled.

8. From at least June 2012 through August 9, 2012, Defendant engaged in unlawful employment practices at its facility in Thomasville, North Carolina, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1). Specifically, Defendant discriminated against Clark and other similarly situated black employees by subjecting them to severe or pervasive racial comments and conduct that created a racially hostile work environment.  The racial comments and conduct were unwelcome to Clark and other similarly situated black employees, and were perpetrated by Defendant's Lead Person, who is white.

9. Clark began working for Defendant as a Truck Loader in or around March 2012.  In or around June 2012, Clark heard the Lead Person use the word "nigger" two times.

10. In or around July 2012, a representative of one of Defendant's clients came to Defendant's facility to conduct business.  The representative, who is a black male, asked the Lead Person about Clark's whereabouts and the Lead Person's response included a reference to Clark as "nigger."  The representative informed Clark about the racial slur used by the Lead Person in reference to Clark.  Clark asked the representative to report this incident to Defendant's Shipping Manager. The representative reported the incident but the Shipping Manager took no corrective action in response thereto.

11. On the same day, in July 2012, Clark overheard the Lead Person refer to Kenneth Clark (hereafter "K. Clark"), another black employee of Defendant, as "nigger."

3

Kenneth Clark, who heard the comment when it was made, was very upset about being called the racial slur by the Lead Person.

12. A few days later, in July 2012, Ricky Clark heard the Lead Person make a comment in the presence of Defendant's Director of Operations stating that work would be completed on that day because Defendant had " some white boys" doing the work. Clark perceived the comment to mean that black workers were inferior to white workers. The Director of Operations smiled and walked away without taking any corrective action against the Lead Person for his remark.

13. Ricky Clark reported all of the Lead Person's racially derogatory comments to Defendant's Plant Manager. The Plant Manager later approached Clark and told him that the Lead Person would be fired if he ever used the word "nigger" again.

14. On or about August 1, 2012, Ricky Clark was walking in Defendant's facility with Kenneth Clark when the Lead Person approached them and used the word "nigger" twice in speaking to them.

15. Ricky Clark complained about the racial harassment once again to Defendant's Plant Manager on or about August 6, 2012. He specifically complained about the Lead Person's conduct that occurred on or about August 1, 2012. The Plant Manager again said he would take care of it.

16. The next day, on or about August 7, 2012, the Plant Manager told Ricky Clark he had spoken to Defendant's Director of Operations and that the Director would take care of Clark's complaint. Clark never received any further communication from Defendant about the resolution of his harassment complaint.

4

17. <u>Class Allegations.</u> In addition to subjecting Ricky Clark to a racially hostile work environment which began in or around July 2012, Defendant has subjected other similarly situated black employees to unwelcome conduct that created a racially hostile work environment based on their race, black.

18. Specifically, Kenneth Clark heard the Lead Person use the word "nigger" at work on at least two occasions. The first incident occurred in or around July 2012 when the Lead Person referred to Kenneth Clark as "nigger" while talking to him and another employee, whose ethnicity was Asian. The incident upset Kenneth Clark. The second incident occurred the same day in July 2012. Kenneth Clark was working in the loading section with the Lead Person, Shipping Manager, and two other Defendant's employees. After Kenneth Clark placed an item in the truck, the Lead Person said "that's my nigger." The Lead Person and Shipping Manager laughed and the Shipping Manager did not reprimand the Lead Person for using the racially derogatory slur. According to Kenneth Clark, this is the same incident that Ricky Clark alleges (see ¶11 above). Finally, on August 1, 2012, Kenneth Clark was present when the Lead Person used the word "nigger" twice when speaking to him and Ricky Clark.

19. Defendant is liable for subjecting Ricky Clark and class of similarly situated black employees to a hostile work environment because Defendant knew or should have known about the harassment yet failed to take effective action to stop it.

20. <u>Retaliation</u>. On or about August 9, 2012, Defendant engaged in unlawful employment practices at its facility in Thomasville, North Carolina in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by willfully discharging Ricky Clark

5

Case 1:13-cv-00706-UA-JLW   Document 1   Filed 08/28/13   Page 5 of 9

because he opposed employment practices made unlawful by Title VII. Specifically, after Clark complained to Defendant multiple times about the racially hostile work environment, Clark's supervisor (Defendant's Shipping Manager) informed Clark that he was terminated on or about August 9, 2012. The Shipping Manager did not give Clark a reason for his termination.

21. The next day, on or about August 10, 2012, when Clark returned to Defendant's facility to pick up his last paycheck, he met with Defendant's Owner. Clark told the Owner that he felt he had been terminated because of his complaint about the racial harassment. Clark also told the Owner about the Lead Person's racially derogatory remarks toward him and other black employees, specifically his use of the word "nigger" at work. The Owner told Clark he was a good worker and that he would get back to him about whether he could be reinstated as an employee. The Owner never contacted Clark.

22. The same day, on or about August 10, 2012, Clark spoke with Defendant's Personnel Coordinator who indicated she was not aware of the reason for Clark's termination. On or about August 14, 2012, the Personnel Coordinator contacted Clark and told him he had been terminated for failing to submit paperwork associated with mattress returns, which he was allegedly required to submit as part of his duties, and further because Respondent was eliminating his position. This was the first time that anyone at Defendant had explained to Clark why he was allegedly discharged.

23. The effect of the practices complained of above has been to deprive Ricky Clark and other similarly situated black employees of equal employment opportunities, and otherwise adversely affect their status as employees because of their race, black.

24. The effect of the practices complained of above has been to deprive Ricky Clark of equal employment opportunities and otherwise adversely affect his status as an employee because of his opposition to practices made unlawful under Title VII.

25. The unlawful employment practices complained of above were intentional.

26. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ricky Clark and other similarly situated black employees.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from maintaining a racially hostile work environment or engaging in any other employment practice that discriminates on the basis of race, black, and from retaliating against employees who oppose practices made unlawful by Title VII.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for blacks, which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Ricky Clark whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to reinstatement or front pay in lieu thereof.

7

D. Order Defendant to make Ricky Clark and other similarly situated black employees whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendant to make Ricky Clark and other similarly situated black employees whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

F. Order Defendant to pay punitive damages to Ricky Clark and other similarly situated black employees for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

DATED this 28th day of August, 2013.

                                              Respectfully submitted,

                                              P. DAVID LOPEZ
                                              General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
131 M. Street, NE
Fourth Floor, Suite 4NWO2F
Washington, D.C. 20507

**/s/ Lynette A. Barnes**
LYNETTE A. BARNES (NC Bar # 19732)
Regional Attorney

**/s/ Darryl L. Edwards**
DARRYL L. EDWARDS
Trial Attorney (PA Bar ID#205906)
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Charlotte District Office
129 West Trade Street, Suite 400
Charlotte, NC 28202
Telephone: (704) 954-6467
Facsimile: (704) 954-6412
E-mail: darryl.edwards@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**